UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE G. HASH,<br><br>Plaintiff,<br><br>v.<br><br>M. GIACOMAZZI, et al.,<br><br>Defendants. | Case No. 20-cv-01116 EJD (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 80) |

Plaintiff, a state prisoner, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983, against employees at San Quentin State Prison ("SQSP").[1] Dkt. No. 1. The amended complaint is the operative complaint in this action, Dkt. Nos. 15, 15-1, as well as a supplemental pleading, Dkt. No. 55. The only remaining claim in this action involves due process violations in connection with five disciplinary actions regarding threats to staff and their family, issued on February 14, 2016. Dkt. No. 67 at 2. Defendants M. Giacomazzi, D. Dorsey, D. Petrovic, B. Haub, B. Walls, and D. Spurgeon filed a motion for summary judgment based on the grounds that Plaintiff received constitutionally adequate notice of the allegations against him, the confidential information used in the hearings had adequate indica of reliability, and they are entitled to qualified immunity. Dkt. No. 80.[2] Defendants P. Covello, J. Arnold, and M. Nelson, who were

---

[1] San Quentin State Prison has recently been renamed "San Quentin Rehabilitation Center." Because the papers filed in this matter refer to the facility by its former name, "SQSP," the Court will do so in this order for the sake of consistency and to avoid confusion.

[2] In support of their summary judgment motion, Defendants submit the following declarations and exhibits: (1) Defendant B. Haub with exhibits containing copies of the rehearing results and supplementals for RVR No. 6611, Dkt. No. 80-3 (Exs. A, B); (2) Defendant B. Wall with exhibits containing copies of the rehearing results and supplementals for RVR Nos. 4973, 4973, and 6612,

1    added later through the supplemental pleading, were granted leave to join in this summary

2    judgment motion.  Dkt. No. 121.  Plaintiff filed an opposition which is accompanied by a

3    declaration and a "responsive separate statement."  Dkt. Nos. 133, 133-1, 134.[3]

4    Defendants filed a reply.  Dkt. No. 136.

5        Plaintiff has again filed an overly lengthy declaration which is inappropriate.  Dkt.

6    No. 133-1.  Federal Rule of Civil Procedure 56(c)(4) provides that a declaration used to

7    support or oppose a motion for summary judgment "must be made on personal knowledge,

8    set out facts that would be admissible in evidence, and show that the affiant or declarant is

9    competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Plaintiff states on

10   page one that the declaration contains "facts based on [his] own knowledge, except as to

11   those matters expressly based on information and belief, which [he] believe[s] to be true."

12   Dkt. No. 133-1 at 1.  However, the following 69 pages are full of legal arguments and

13   conclusory assertions rather than facts based on personal knowledge.  Id. at 2-70.  The

14   Court already struck prior declarations under Civil Local Rule 7-5(b) because they were

15   excessive and contained "inappropriate legal arguments."  See Dkt. No. 125 at 3; Dkt. No.

16   131 at 4.  Plaintiff was twice made aware of the problems with his prior declarations and

17   has again failed to comply with those warnings.  Accordingly, the Court finds the instant

18   declaration must also be stricken under Local Rule 7-5(b) and will not consider it in

19   deciding Defendants' summary judgment motion.

20       For the reasons set forth below, Defendants' motion is **GRANTED**.

21

22

23

24   Dkt. No. 80-4 (Exs. A-F); (3) Defendant D. Dorsey, Dkt. No. 80-5; (4) Defendant D. Petrovic,

25   Dkt. No. 80-6; (5) Defendant D. Spurgeon with exhibits containing copies of the rehearing results
     and supplementals for RVR No. 6610, Dkt. No. 80-7 (Ex. A); (6) Defendant M. Giacomazzi with

26   exhibits containing copies of RVR Nos. 4671, 4973, 6610, 6611, and 6612, Dkt. No. 80-8 (Exs. A-
     E); and (7) non-party T. Johnson (Correctional Counselor II at SQSP) with exhibits containing

27   copies of Form 1030s on connection with the RVRs and Title 15, sections, §§ 3311, 3321, et seq.,
     Dkt. No. 80-9 (Exs. A-E).

28   [3] Along with his opposition, Plaintiff filed a "responsive separate statement," in which he
     disputes specific "facts" set forth in Defendants' moving separate statement.  Dkt. No. 134.

United States District Court
Northern District of California

United States District Court
Northern District of California

**DISCUSSION**

## I.    Statement of Facts[4]

Plaintiff challenges five Rules Violation Reports ("RVR") for which he was found guilty after disciplinary proceedings concluded. The RVRs all concern a series of anonymous letters which threatened various prison staff and private citizens. Plaintiff claims that his right to procedural due process was violated during the disciplinary proceedings based on the following: (1) inadequate notice of the charges; and (2) lack of indicia of reliability for the confidential information used in the disciplinary hearings. Dkt. No. 15 at 12, Dkt. No. 15-1 at 24, 27; Dkt. No. 28 at 3-10.

### A.    Threatening Letters

Beginning in 2014, there was an increase in the number of threatening letters found by SQSP personnel. Giacomazzi Decl. ¶ 3; Petrovic Decl. ¶ 3. Throughout 2015 and into 2016, these letters continued to be found, primarily in the West Block housing unit of SQSP. Id. The letters were directed at various prison staff and some private citizens. Id. The threats were violent in nature, usually threatening to kill or cause serious bodily injury that would lead to death. Id. The letters also threatened the subjects with rape and rape with foreign objects, among other violent crimes. Id.

The Investigative Services Unit ("ISU") of SQSP investigated the letters. Giacomazzi Decl. ¶ 4; Petrovic Decl. ¶ 4. The ISU is an elite unit that is tasked with the investigation of all types of criminal activity occurring within and outside the prison, including possession of contraband, gang activity, assaults, homicides, drug overdoses, allegations of sexual assault, and confidential staff complaints, among others. Giacomazzi Decl. ¶ 4. Defendant Dorsey, a Correctional Lieutenant at the time, was supervising the unit conducting the investigation into the anonymous letters. Dorsey Decl. ¶ 3. Under Defendant Dorsey was Defendant D. Petrovic, a Correctional Sergeant with the ISU at the time, who was also involved in the investigation. Petrovic Decl. ¶ 4; Dorsey Decl. ¶ 4.

---

[4] The following facts are undisputed unless otherwise indicated.

Defendant Petrovic was the director supervisor of Defendant M. Giacomazzi, a Correctional Officer with ISU at the time, who was the lead investigator. Giacomazzi Decl. ¶ 4; Dorsey Decl. ¶ 4. Through a combination of confidential information, circumstantial evidence, and physical evidence, the ISU determined that Plaintiff was responsible for the threatening letters. Giacomazzi Decl. ¶ 5; Dorsey Decl. ¶ 4.

As part of his investigation, Defendant Giacomazzi conducted a search of Plaintiff's cell on or about February 4, 2016, during which several exemplars of Plaintiff's writings were located and compared to the threatening letters. Dkt. No. 15 at 12; Giacomazzi Decl. ¶ 9. An FBI agent was unable to determine conclusively that Plaintiff was the author nor rule him out, and fingerprint analysis was also inconclusive. Id. ¶¶ 10, 11. According to Defendant Giacomazzi, some of the letters made use of forgery, and a review of Plaintiff's disciplinary history revealed he has a history of forgery. Id. ¶ 12.

Defendant Petrovic authored a confidential memorandum ("memo") which contained evidence from several confidential sources. Giacomazzi Decl. ¶ 6; Petrovic Decl. ¶ 4. The information in the memo was classified as confidential because revealing it may have endangered the safety of individuals and the security of SQSP. Dorsey Decl. ¶ 22. The memo was completed on March 7, 2016. Giacomazzi Decl. ¶ 6; Dorsey Decl. ¶ 4. Defendant Giacomazzi completed the investigation on March 9, 2016. Giacomazzi Decl. ¶ 4; Dorsey Decl. ¶ 4. The memo was reviewed and approved on March 18, 2016, by Captain N. Avila, the Facility Captain for West Block of SQSP. Petrovic Decl. ¶ 5. According to Defendants, the information provided by the confidential informants was determined to be reliable pursuant to § 61020.9.1 of the Department Operations Manual ("DOM") and Title 15, § 3321(c)(2), (c)(4) in that the information was corroborated by additional information independently provided by other informants. Id. ¶ 6. Some of the information was also corroborated through investigation or by information provided by non-confidential sources. Id.

### B.    **Prison Disciplinary Procedures**

When an inmate engages in misconduct that is believed to be a violation of law or not minor in character, it is reported in an RVR.  Johnson Decl. ¶ 4, Ex. D-001.[5]  When an RVR is issued, the inmate must be served usually within 15 days of the date on which the prison staff discovered the information which led to the charges.  Id. ¶ 12, Ex. D-009.  In the case when an RVR is ordered re-heard, the time limitations commence from the date of the order for re-hearing.  Id.

If an RVR involves the use of confidential information, an inmate is notified with a "Confidential Information Disclosure Form" (Form 1030), which indicates that information received from a confidential source has been considered in the RVR, the basis for its reliability, the disclosed information, and the type and current location of the documentation.  See, e.g., Johnson Decl., Ex. A; Dkt. No. 80-9 at 8-13.

An inmate may get a Staff Assistant ("SA") appointed to them during the RVR process.  Johnson Decl., Ex. D-004.  An SA is assigned to an inmate when the inmate is illiterate or non-English speaking, when the complexity of the case makes assistance necessary, or when an inmate's disability makes assistance necessary.  Johnson Decl. ¶ 8, Ex. D-004.  An SA will inform an accused inmate of their rights and of disciplinary hearing procedures.  Id. ¶ 9.  The SA will also advise and assist in the inmate's preparation for disciplinary hearing, represent the inmate's position at the hearing, and ensure that the inmate's position is understood, and that the inmate understands the judgment reached.  Id. The SA is not to give legal counsel, nor specify the position the inmate should take in the hearing.  Id.

An inmate may also get an Investigate Employee ("IE") appointed to them during the RVR process.  Johnson Decl., Ex. D-008.  An IE is appointed when the complexity of the case requires further investigation, an inmate's housing makes it unlikely the inmate

---

[5] Defendants' exhibits have been numbered "for ease of reference" as "Ex. D-001" for the first page of Exhibit D, "Ex. D-002" for the second page of Exhibit D, etc.  Dkt. No. 80 at 9, fn. 2.

can adequately collect and present evidence, or when a determination has been made that additional information is necessary for a fair hearing. Johnson Decl. ¶ 10, Ex. D-004. An IE will interview the charged inmate, gather information, question all staff and inmates who may have relevant information, screen prospective witnesses, and submit a written report to the Senior Hearing Officer ("SHO") which will contain witness statements and a summary of the information collected. Id. ¶ 11, Ex. D-004, 005.

Generally, an RVR will be heard within 30 days of the inmate being served. The hearing may be postponed upon the inmate's request or if exceptional circumstances exist. Id. ¶ 12, Ex. D-009.

The hearing for an RVR is overseen by the SHO. Spurgeon Decl. ¶ 5; Haub Decl. ¶ 5; Walls Decl. ¶ 5. The role of SHO in a prison disciplinary hearing is analogous to a judge in criminal proceeding. Id. The SHO will ultimately determine whether the accused is guilty or not, but also make determinations during the hearing such as whether a question put to a witness is relevant or not, or even whether the witness testimony sought is necessary. Haub Decl. ¶ 5; Walls Decl. ¶ 5. The SHO will also review whether the inmate has been adequately noticed of the charges and that all evidence classified as confidential has been accurately classified. Spurgeon Decl. ¶ 5; Haub Decl. ¶ 4; Walls Decl. ¶ 4. The role of SHO is usually fulfilled by Correctional Lieutenants. Spurgeon Decl. ¶ 4; Haub Decl. ¶ 3; Walls Decl. ¶ 3. Correctional Lieutenants will be assigned RVR hearings on a rotating basis, as needed. Id. The SHO must be independent and cannot have taken part in the underlying RVR investigation. Id. In the event an RVR is ordered re-issued and re-heard, a new SHO must be assigned. Spurgeon Decl. ¶ 7; Haub Decl. ¶ 3; Walls Decl. ¶ 3.

### C. **Plaintiff's RVRs**

Plaintiff challenges the following five RVRs: Log Nos. 4671, 4973, 6610, 6611, and 6612. Dkt. No. 15 at 15, 27. Each of these RVRs involved the use of confidential information and therefore was accompanied by Form 1030s. Johnson Decl. ¶ 20, Ex. A. RVR Nos. 4671, 4973, 6611, and 6612 were each re-issued and re-heard because

6

United States District Court
Northern District of California

unauthorized staff had been present during the deliberations and because the nature of the allegations required Plaintiff to be referred for a mental health evaluation prior to a hearing, which he had not been for the initial hearing for these four RVRs.  Dorsey Decl. ¶ 20.  RVR No. 6610 was re-issued and re-heard twice due to deficiencies under Title 15, until a third and final re-hearing on the matter.  Spurgeon Decl. ¶ 6; Dorsey Decl. ¶ 8.

At the conclusion of each subsequent disciplinary proceeding, Plaintiff was found guilty by a preponderance of the evidence of all five re-issued RVRs, which resulted in the loss of credits.[6]

### 1.    RVR Log No. 4671[7]

In RVR Log No. 4671 ("RVR 4671"), Plaintiff was charged with violation of Title 15 § 3005(a), with the specific act of "Harassment of another person."  Dorsey Decl. ¶ 10; Giacomazzi Decl., Ex. A-001.  Title 15, § 3005(a) prohibits an inmate from behaving in a way which might lead to violence or disorder, or otherwise endangers the facility, outside community, or another person.  Walls Decl. ¶ 8.  RVR 4671 was authored by Defendant Giacomazzi, reviewed by Defendant Petrovic, and classified by Defendant Dorsey. Giacomazzi Decl., Ex. A-002; Petrovic Decl. ¶ 7; Dorsey Decl. ¶ 8; Walls Decl. ¶ 7.

On May 2, 2016, RVR 4671 was ordered to be re-issued and re-heard due to due process concerns in the original proceedings.  Giacomazzi Decl., Ex. A-001.  Defendant Giacomazzi re-issued RVR 4671 on May 5, 2016.  Id.  RVR 4671 and Form 1030s were served on Plaintiff on May 6, 2016, which was within 15 days of the date of the order for rehearing, May 2, 2016.  Johnson Decl. ¶ 13; Walls Decl., Ex. A-001.  RVR 4671 informed Plaintiff that an investigation by the ISU into the author of anonymous letters was concluded on March 9, 2016, and that the author was determined to be Plaintiff.

---

[6] Because Plaintiff is serving an indeterminate life sentence and his minimum eligible parole date had passed, the loss of credits did not push back his release date or the date of his parole eligibility.  Dkt. No. 14 at 2-3.  As such, the Court found that success on his claims would not necessarily shorten his sentence and therefore could proceed under a § 1983 action rather than a habeas action.  Id. at 3.
[7] All the information herein was documented in the log record for RVR 4671.  Walls Decl. ¶ 11, Exs. A, B; Giacomazzi Decl., Ex. A.

Dorsey Decl. ¶ 10; Giacomazzi Decl., Ex. A-001.  Plaintiff was notified that on December 7, 2015, the ISU received one such specific letter through the SQSP institutional mail system.  Id.  Details of the letter were described in the notice, which included the information that the letter was anonymous, addressed to "K[] Mitchell ass, warden," and contained derogatory remarks directed at a prison official, Chief Deputy Warden Mitchell. Id.  The notice also stated that Plaintiff had demonstrated a continuous pattern of hostility towards inmates, staff, and citizens alike, which was unmistakable in the nature of the threatening letters.  Id.  Furthermore, the notice stated that the appearance of the threatening letters coincided with Plaintiff's arrival at SQSP, and that the letters ceased once he was moved to the Adjustment Center.  Id.  Finally, the notice advised Plaintiff that confidential information was used in the investigation, and that the confidential information was contained in a confidential memorandum dated March 7, 2016, authored by Defendant Petrovic.  Id.

The SHO for the RVR re-hearing was Defendant B. Walls.  Walls Decl. ¶ 6, Ex. A-007.  The re-hearing began on June 2, 2016, and ended on June 3, 2016.  Id. at ¶ 9, Ex. A-002.  Defendant Walls issued his decision on August 22, 2016.  Id., Ex. A-007.  Plaintiff was found guilty by a preponderance of the evidence.  Id., Ex. A-005.  The evidence supporting the judgment was Defendant Giacomazzi's statement, the memo authored by Defendant Petrovic, Plaintiff's behavioral history, and a considerable increase in anonymous threatening notes originating from West Block.  Id., Ex. A-005, A-006.

The 1030 forms, which were served on Plaintiff on the same date as the re-issued RVR, advised that confidential information used was classified as such because the information could jeopardize the safety sources or the security of the institution.  Johnson Decl., Ex. A-001 – A-006.  The confidential information was deemed reliable because it had been corroborated by other sources, and it was at least partly already proven true.  Id. The confidential information was also deemed reliable because it had been corroborated by other confidential sources and partly corroborated by independent investigation.  Id.  The 1030 forms also disclosed the information received to the extent possible.  Id.  The hearing

results for RVR 4671 indicated that Defendant Walls had reviewed the confidential information and determined that sufficient information had been disclosed, that 1030 forms were issued, and the reasons why it was deemed confidential and reliable.  Walls Decl., Ex. A-003-004.  Defendant Associate Warden P. Covello approved the decision on August 25, 2016.  Id., Ex. A-008.

## 2.    RVR Log No. 4973[8]

In RVR Log No. 4973 ("RVR 4973"), Plaintiff was charged with violation of Title 15 § 3005(d), with the specific act alleged of "Threatening to cause SBI to a public official."  Dorsey Decl. ¶ 11; Giacomazzi Decl., Ex. B-001.  "SBI" stands for "serious bodily injury."  Dorsey Decl. ¶ 11; Walls Decl. ¶ 15.  Title 15, § 3005(d) prohibits, among other things, an inmate from threatening the use of force or violence upon another person.  Walls Decl. ¶ 15.  The RVR was authored by Defendant Giacomazzi, reviewed by Defendant Petrovic, and classified by Defendant Dorsey.  Giacomazzi Decl., Ex. B-001; Petrovic Decl. ¶ 7; Dorsey Decl. ¶ 8; Walls Decl. ¶ 12.

On April 28, 2016, RVR 4973 was ordered to be re-issued and re-heard due to due process concerns in the original proceedings.  Giacomazzi Decl., Ex. B-001.  Defendant Giacomazzi re-issued RVR 4973 on May 5, 2016.  Id.  RVR 4973 and Form 1030s were served on Plaintiff on May 6, 2016, which was within 15 days of the date of the order for rehearing, April 28, 2016.  Johnson Decl. ¶ 14; Walls Decl., Ex. C-001.  RVR 4671 informed Plaintiff that an investigation by the ISU into the author of anonymous letters was concluded on March 9, 2016, and that the author was determined to be Plaintiff.  Dorsey Decl. ¶ 11; Giacomazzi Decl., Ex. B-001.  Plaintiff was notified that on October 6, 2015, the ISU received one specific letter containing a staff threat through the SQSP institutional mail system.  Id.  Details of the letter were described in the notice, which included information that the letter was anonymous, addressed to "west block med line the blond haired bitch," and that it contained feces positioned in such a way that a person

---

[8] [8] All the information herein was documented in the log record for RVR 4973.  Walls Decl. ¶ 18, Exs. C, D; Giacomazzi Decl., Ex. B.

United States District Court
Northern District of California

1   opening the letter would come into contact with the feces.  Id.  The notice also quoted the

2   letter verbatim and that the intended subject of the letter was determined to be a prison

3   employee, Registered Nurse Wedlake.  Id.  The notice also stated that Plaintiff had

4   demonstrated a continuous pattern of hostility towards inmates, staff, and citizens alike,

5   which was unmistakable in the nature of the threatening letters.  Id.  Furthermore, the

6   notice stated that the appearance of the threatening letters coincided with Plaintiff's arrival

7   at SQSP, and that the letters ceased once Plaintiff was moved to the Adjustment Center.

8   Id.  Finally, the notice advised Plaintiff that confidential information was used in the

9   investigation, and that the confidential information was contained in a confidential

10  memorandum dated March 7, 2016, authored by Defendant Petrovic.  Id.

11      The SHO for this RVR re-hearing was Defendant B. Walls, who issued his decision

12  on August 27, 2016.  Walls Decl. ¶ 6, Ex. C-007.  Plaintiff was found guilty by a

13  preponderance of the evidence.  Id., Ex. C-005.  The evidence supporting the judgment

14  was Defendant Giacomazzi's findings, the memo authored by Defendant Petrovic,

15  Plaintiff's behavioral history, and the fact that a considerable increase in anonymous

16  threatening notes originating from West Block coincided with Plaintiff's transfer to SQSP

17  and that when Plaintiff was transferred out of West Block to the Adjustment Center, the

18  anonymous threatening letters/notes completely stopped appearing in West Block.  Walls

19  Decl. ¶ 16, Ex. C-005, C-006.

20      The 1030 forms, which were served on Plaintiff on the same date as the re-issued

21  RVR, advised that confidential information used was classified as such because the

22  information could jeopardize the safety sources or the security of the institution.  Johnson

23  Decl., Ex. A-001-006.  The confidential information was deemed reliable because it had

24  been corroborated by other sources, and at least partly already proven to be true.  Id.  The

25  1030 forms also disclosed the information received to the extent possible.  Id.  The hearing

26  results from RVR 4973 indicated that Defendant Walls had reviewed the confidential

27  information, determined that sufficient information had been disclosed, 1030 forms were

28  issued, the reasons, and why it was deemed confidential and reliable.  Walls Decl., Ex. C-

United States District Court
Northern District of California

10

003.  Defendant Covello approved the decision on September 1, 2016.  Id., Ex. C-008.

### 3.    RVR Log No. 6610[9]

In RVR Log No. 6610 ("RVR 6610"), Plaintiff was charged with a second violation of Title 15 § 3005(d),[10] i.e., "Threatening to kill a public official."  Dorsey Decl. ¶ 16; Giacomazzi Decl., Ex. C-002.  RVR 6610 was authored by Defendant Giacomazzi, reviewed by Defendant Sgt. M. Nelson, and classified by Defendant Captain J. Arnold. Giacomazzi Decl., Ex. C-002; Dorsey Decl. ¶ 8; Spurgeon Decl. ¶ 9.

RVR 6610 was re-issued and re-heard twice.  Dorsey Decl. ¶ 8; Giacomazzi Decl., Ex. C-001.  The second time was on November 4, 2016, when RVR 6610 was ordered to be re-issued and re-heard due to multiple due process errors from the previous disciplinary proceedings.  Id.  Defendant Giacomazzi re-issued RVR 6610 on November 8, 2016.  Id., Ex. C-002.  RVR 6610 and Form 1030s were served on Plaintiff on November 14, 2016, which was within 15 days of the date of the order for rehearing, November 4, 2016. Johnson Decl. ¶ 15; Spurgeon Decl., Ex. A-001.  RVR 6610 informed Plaintiff that an investigation by the ISU into the author of anonymous letters was concluded on March 9, 2016, and that the author was determined to be Plaintiff.  Spurgeon Decl. ¶ 6; Giacomazzi Decl., Ex. C-001.  Plaintiff was notified of six specific letters received by ISU through the SQSP institutional mail system; the letters were quoted verbatim in the RVR notice. Spurgeon Decl. ¶¶ 10-15; Giacomazzi Decl., Ex. C-001.  The letters are summarized as follows:

- In February 2015, a letter threatening to kill Sgt. Van Blarcom, a Correctional Sergeant at SQSP, by "run[ning] a blade across your neck so bad you'll bleed out" if he ever came to West Block again.  Id.

- On or about October 20, 2015, a letter threatening Officer Rasmussen, a Correctional Officer at SQSP, to stab him with a knife through the neck.  Id.

---

[9] All the information herein was documented in the log record for RVR 6610.  Spurgeon Decl. ¶ 19, Exs. A, B; Giacomazzi Decl., Ex. C.

[10] Title 15, § 3005(d) prohibits, among other things, an inmate from threatening the use of force or violence upon another person.  Walls Decl. ¶ 15.

- On or about December 7, 2015, a letter threatening Deputy Chief K. Mitchell with cutting off his head, having intercourse with that head, and then feeding the head to the pigeons. Id.

- On or about January 7, 2016, a letter threatening to rape and murder Correctional Sergeant Campbell at SQSP by breaking her neck. Id.

- On or about February 1, 2016, a lengthy letter containing even more explicitly descriptive threats of raping Sgt. Campbell, once the writer was released from prison. Id.

- On or about February 3, 2016, a letter threatening to kill Officer Arana, a Correctional Officer at SQSP, by cutting of his head. Id.

The notice also stated that on March 5, 2016, Plaintiff was found to be in possession of a deadly weapon, i.e., a box cutter type razor, which proved his ability to carry out the above threats. Id. In addition, the notice stated that Plaintiff had demonstrated a continuous pattern of hostility towards inmates, staff, and citizens alike, which was unmistakable in the nature of the threatening letters. Id. Furthermore, the notice stated that the appearance of the threatening letters coincided with Plaintiff's arrival at SQSP, and that the letters ceased once Plaintiff was moved to the Adjustment Center. Id. Finally, the notice advised Plaintiff that confidential information was used in the investigation, and that the confidential information was contained in a confidential memorandum dated March 7, 2016, authored by Defendant Petrovic. Id.

The SHO for the re-hearing was Defendant D. Spurgeon. Spurgeon Decl. ¶ 3, Ex. A-011. The re-hearing took place on December 13, 2016. Id., Ex. A-001. Plaintiff was found guilty by a preponderance of the evidence. Spurgeon Decl. ¶ 17, Ex. A-008. The evidence supporting the judgment was Defendant Giacomazzi's statement, the memo authored by Defendant Petrovic, Plaintiff's behavioral history, and the fact that a considerable increase in anonymous threatening notes originating from West Block coincided with Plaintiff's transfer to SQSP and that when Plaintiff was transferred out of West Block to the Adjustment Center, the anonymous threatening letters/notes completely stopped appearing in West Block. Id., Ex. A-009-010.

The 1030 forms, which were served on Plaintiff on the same date as the re-issued RVR, advised that confidential information used was classified as such because the information could jeopardize the safety sources or the security of the institution. Johnson Decl., Ex. B-001-023. The 1030 forms notified Plaintiff of the reasons the confidential information was deemed reliable. Id. The 1030 forms also disclosed the information received to the extent possible. Id. The hearing results for RVR 6610 indicated that Defendant Spurgeon had reviewed the confidential information, determined that sufficient information had been disclosed, 1030 forms were issued, and the reasons, why it was deemed confidential and reliable. Spurgeon Decl., Ex. A-003-006. Defendant Covello approved the decision on December 27, 2016. Id., Ex. A-012.

### 4.   RVR Log No. 6611[11]

In RVR Log No. 6611 ("RVR 6611"), Plaintiff was charged with violation of Title 15 § 3005(d), with the specific act of "Threatening to cause SBI to a public official[']s family." Dorsey Decl. ¶ 15; Giacomazzi Decl., Ex. D-001. RVR 6611 also referred to, and quoted, California Penal Code § 422(a), the California criminal statute prohibiting criminal threats. Id. RVR 6611 was authored by Defendant Giacomazzi, reviewed by Defendant Petrovic, and classified by Defendant Dorsey. Giacomazzi Decl., Ex. D-002; Petrovic Decl. ¶ 7; Dorsey Decl. ¶ 8; Haub Decl. ¶ 9.

On April 28, 2016, RVR 6611 was ordered to be re-issued and re-heard due to due process concerns from the original proceedings. Giacomazzi Decl., Ex. D-001. Defendant Giacomazzi re-issued RVR 6611 on May 5, 2016. Id. RVR 6611 and Form 1030s were served on Plaintiff on May 6, 2016, which was within 15 days of the date of the order for rehearing, April 28, 2016. Johnson Decl. ¶ 16; Haub Decl., Ex. A-001. RVR 6611 informed Plaintiff that an investigation by the ISU into the author of anonymous letters was concluded on March 9, 2016, and that the author was determined to be Plaintiff. Dorsey Decl. ¶ 13; Haub Decl. ¶ 8; Giacomazzi Decl., Ex. D-001. Plaintiff was notified of

---

[11] All the information herein was documented in the log record for RVR 6611. Haub Decl. ¶ 17, Exs. A, B; Giacomazzi Decl., Ex. D.

four specific letters received by the ISU through the SQSP institution mail system.  Id. The four letters at issue in the RVR were transcribed verbatim in the notice, and stated the date each was discovered.  Dorsey Decl. ¶ 13; Haub Decl. ¶¶ 10-13; Giacomazzi Decl., Ex. D-001.  The letters are summarized as follows:

- On January 13, 2015, a letter threatening violent and fatal sodomy on the mother of Lieutenant Williams, a prison official.  Id.

- On May 22, 2015, a letter threatening to stab him in the neck with a knife against Correctional Officer Echevarria.  Id.

- On October 12, 2015, a letter threatening Correctional Sgt. Campbell, with violent sodomy resulting in death.  Id.

- On October 20, 2015, a letter threatening to kill Officer Rasmussen, by stabbing him in the neck with a knife.  Id.

The RVR 6611 notice also advised that Plaintiff was found to be in possession of a box-cutter-type razor on March 5, 2016, and that possession of the weapon led investigators to further believe Plaintiff was capable of carrying out the threats.  Dorsey Decl. ¶ 14; Giacomazzi Decl., Ex. D-001.

The SHO for this RVR rehearing was Defendant B. Haub, who issued his decision on July 19, 2016.  Haub Decl. ¶ 7, Ex. A-007.  Plaintiff was found guilty by a preponderance of the evidence.  Id. ¶ 15, Ex. A-006.  Defendant Haub stated that the evidence supporting the judgment was Defendant Giacomazzi's report, the memo authored by Defendant Petrovic, witness statements, Plaintiff's behavior history, and the fact that a considerable increase in anonymous threatening notes originating from West Block coincided with Plaintiff's transfer to SQSP and that when Plaintiff was transferred out of West Block to the Adjustment Center, the anonymous letters/notes completely stopped appearing in West Block.  Id.

The 1030 forms, which were served on Plaintiff on the same date as the RVR, advised that confidential information used was classified as such because the information could jeopardize the safety sources or the security of the institution.  Johnson Decl., Ex. C-

14

1     001.  The confidential information was deemed reliable because it had been corroborated

2     by other sources, and at least partly already proven to be true.  Id.  The 1030 forms also

3     disclosed the information received to the extent possible.  Id.  The hearing results for RVR

4     6611 indicated that Defendant Haub had reviewed the confidential information,

5     determined that sufficient information had been disclosed, a 1030 form was issued, and the

6     reasons why it was deemed confidential and reliable.  Haub Decl., Ex. A-003.  Defendant

7     Covello approved the decision on July 20, 2016.  Id., Ex. A-008.

### 5.    RVR Log No. 6612[12]

8

9         In RVR Log No. 6612 ("RVR 6612"), Plaintiff was charged with violation of Title

10    15 § 3005(b), with the specific act of "Willfully delaying a Peace Officer in the

11    performance of duty."  Dorsey Decl. ¶ 19; Giacomazzi Decl., Ex. E-001.  RVR 6612 was

12    authored by Defendant Giacomazzi, reviewed by Defendant Petrovic, and classified by

13    Defendant Dorsey.  Giacomazzi Decl., Ex. E-002; Petrovic Decl. ¶ 7; Dorsey Decl. ¶ 8;

14    Walls Decl. ¶ 19.

15        On May 2, 2016, RVR 6612 was ordered to be re-issued and re-heard due to due

16    process concerns from the original proceedings.  Giacomazzi Decl., Ex. E-001.  Defendant

17    Giacomazzi re-issued RVR 6612 on May 5, 2016.  Id.  RVR 6612 and Form 1030s were

18    served on Plaintiff on May 6, 2016, which was within 15 days of the date of the order for

19    rehearing, May 2, 2016.  Johnson Decl. ¶ 17; Walls Decl., Ex. E-001.  RVR 6612 informed

20    Plaintiff that an investigation by the ISU into the author of anonymous letters had been

21    conducted, and that the author was determined to be Plaintiff based on a combination of

22    confidential information, circumstantial evidence, and physical evidence.  Giacomazzi

23    Decl., Ex. E-001.  The notice also stated that the ISU received a series of anonymous

24    letters which attempted to shift blame for the threatening notes to other inmates.  Id.;

25    Dorsey Decl. ¶ 16; Walls Decl. ¶¶ 21-24.  The letters are summarized as follows:

26

27

28    _____
[12] All the information herein was documented in the log record for RVR 6612.  Walls Decl.
¶ 28, Exs. E, F; Giacomazzi Decl., Ex. E.

United States District Court
Northern District of California

- On October 28, 2014, a letter attempting to implicate another inmate, Mr. Cooney, by stating Cooney was manufacturing a weapon and intending to use it against prison Staff.  Id.  The allegations were found to be unsubstantiated, and the notice described some of the evidence that led to that conclusion.  Id.

- On March 26, 2015, a letter stating that another inmate, Mr. Hazelton, was planning to stab a correctional officer.  Id.  The allegations of this note were found to be unsubstantiated.  Id.

- On June 29, 2015, a note alleging that Correctional Office Hopkins was stoking racial tension on West Block, causing some inmates to plan to assault him.  Id.  This note was transcribed verbatim in the notice.  Id.  The allegations were investigated and found to be unsubstantiated.  Id.

- In June 2015, a note alleging to identify the author of the threatening letters containing feces.  Id.  The note was transcribed in its entirety in the notice.  Id.

- On October 27, 2015, a note alleging that an unidentified black inmate was planning to rape Correctional Sgt. Campbell.  Id.  The letter was quoted verbatim in its entirety.  Id.

The RVR 6612 notice also advised Plaintiff that the letters caused considerable disruption in the prison because of the threat assessments that needed to be completed as a result of each letter.  Dorsey Decl. ¶ 17; Giacomazzi Decl., Ex. E-001.  Furthermore, the notice advised Plaintiff that based on a confidential memorandum dated March 7, 2016, authored by Defendant Petrovic, it was determined that Plaintiff authored at least one of the notes to cause fear without taking responsibility.  Dorsey Decl. ¶ 18; Giacomazzi Decl, Ex. E-001.  It was determined that Plaintiff was in direct violation of CCR § 3005(b) "by willfully authoring anonymous notes/letters in order to intimidate, disrupt, and terrify staff members, inmates, and private citizens and delaying/obstructing multiple peace officers in their assigned duties by creating unnecessary reports and interviews to be conducted."  Giacomazzi Decl., Ex. E-001.

The SHO for this RVR re-hearing was Defendant Walls, who issued his decision on September 16, 2016.  Walls Decl. ¶ 6, Ex. E-007.  Plaintiff was found guilty by a preponderance of the evidence.  Id. ¶ 26, Ex. E-006.  The evidence supporting the judgment was Defendant Giacomazzi's statement and the memo authored by Defendant

16

1   Petrovic.  Id.

2          The 1030 forms, which were served on Plaintiff on the same date as the RVR,

3   advised that confidential information used was classified as such because the information

4   could jeopardize the safety sources or the security of the institution.  Johnson Decl., Ex. A-

5   001-006.  The confidential information was deemed reliable because it had been

6   corroborated by other sources, and at least partly already proven to be true.  Id.  The 1030

7   forms also disclosed the information received to the extent possible.  Id.  The hearing

8   results for RVR 6612 indicated that Defendant Walls reviewed the confidential

9   information, determined that sufficient information had been disclosed, 1030 forms were

10  issued, and the reasons why it was deemed confidential and reliable.  Walls Decl., Ex. E-

11  003-004.  Defendant Covello approved the decision on October 31, 2016.  Id., Ex. E-008.

12  **II.    <u>Summary Judgment</u>**

13         Summary judgment is proper where the pleadings, discovery and affidavits show

14  that there is "no genuine dispute as to any material fact and the movant is entitled to

15  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment

16  "against a party who fails to make a showing sufficient to establish the existence of an

17  element essential to that party's case, and on which that party will bear the burden of proof

18  at trial . . . since a complete failure of proof concerning an essential element of the

19  nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp. v.</u>

20  <u>Cattrett</u>, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of

21  the lawsuit under governing law, and a dispute about such a material fact is genuine "if the

22  evidence is such that a reasonable jury could return a verdict for the nonmoving party."

23  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

24         Generally, the moving party bears the initial burden of identifying those portions of

25  the record which demonstrate the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex</u>

26  <u>Corp.</u>, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue

27  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

28  than for the moving party.  But on an issue for which the opposing party will have the

United States District Court
Northern District of California

17

burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corporation Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Liberty Lobby, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." Id. (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." Id. (citing Liberty Lobby, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29

1    (9th Cir. 2001).

2        A.    **Due Process**

3        Prisoners retain their right to due process subject to the restrictions imposed by the

4    nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Thus

5    although prison disciplinary proceedings are not part of a criminal prosecution and the full

6    panoply of rights due a defendant in such proceedings does not apply, where serious rules

7    violations are alleged and the sanctions to be applied implicate state statutes or regulations

8    which narrowly restrict the power of prison officials to impose the sanctions and the

9    sanctions are severe, the Due Process Clause requires certain minimum procedural

10   protections.  See id. at 556-57, 571-72 n.19.  The placement of a California prisoner in

11   isolation or segregation, or the assessment of good-time credits against him, as a result of

12   disciplinary proceedings, for example, is subject to Wolff's procedural protections if (1)

13   state statutes or regulations narrowly restrict the power of prison officials to impose the

14   deprivation, and (2) the liberty in question is one of "real substance."  See Sandin v.

15   Conner, 515 U.S. 472, 477-87 (1995).

16       California's regulations concerning discipline provide explicit standards that

17   narrowly fetter official discretion.  Under California Code of Regulations title 15, section

18   3320(l), officials must find that a preponderance of the evidence substantiates the charge

19   before guilt may be found and punishment assessed.  Absent such a finding the inmate may

20   not be placed in isolation nor segregation, nor assessed good-time credits.  See also Cal.

21   Code Regs. tit. 15, § 3320(a) (requiring notice); id. § 3320(b) (requiring hearing).  Because

22   a prisoner may not be disciplined unless explicit substantive and procedural requirements

23   are met, the disciplinary standards and procedures meet the "narrowly restrict" prong of

24   the Sandin test.  See Walker v. Sumner, 14 F.3d 1415, 1419 (9th Cir. 1994) (finding

25   Nevada regulations, which are similar to California's, create liberty interest).  Here, it is

26   undisputed that Plaintiff was entitled to Wolff's procedural protections in the disciplinary

27   proceedings at issue.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

Wolff established five procedural requirements.  First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  Wolff, 418 U.S. at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."  Id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  Id. at 566.  Fifth, "[w]here an illiterate inmate is involved… or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or… to have adequate substitute aid… from the staff or from a[n]… inmate designated by the staff."  Wolff, 418 U.S. at 570.  The Supreme Court specifically held that the Due Process Clause does not require that prisons allow inmates to cross-examine their accusers, see id. at 567-68, and does not give rise to a right to counsel in the proceedings, see id. at 569-70.

The fact that a prisoner may have been innocent of the charges does not raise a due process issue.  The Constitution demands due process, not error-free decision-making.  See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).

Because the due process errors from the initial hearings were corrected during the administrative appeal process, the Court determined that Plaintiff has no claim for a due process violation based on those initial proceedings.  Dkt. No. 28 at 5-6, citing Frank v. Schultz, 808 F.3d 762, 763-64 (9th Cir. 2015) (summary judgment properly granted for defendants because any procedural protection was corrected through administrative appeal process and plaintiff did not lose good time credits).  The administrative appeal process is

considered "part of the due process" provided to the prisoner.  See id.

### 1.    Notice Requirement

Plaintiff alleged in the FAC that the five RVRs contained inadequate notice regarding the charges because they did not describe the date, time, or place of the alleged misbehavior.  Dkt. No. 15 at 12.

### a.    Parties' Arguments

Defendants assert that for each of the five RVRs in question, Plaintiff was served with an RVR which contained a brief description of the allegations against him in a section entitled circumstances of the violation.  Dkt. No. 80 at 23.  Defendants assert that the circumstances of violation section of the RVRs advised Plaintiff of the dates, or approximate dates, of when the letters were discovered, who the targets of the letters were (when it could be determined), the text of the letters, and other details such as when a letter contained human feces.  Id., citing Giacomazzi Decl. Exs. A-E.  Defendants assert that this section also indicated to Plaintiff that he had demonstrated a pattern of behavior which also was weighed as evidence in the investigation.  Id.  Lastly, Defendants assert that Plaintiff was noticed that the increase in anonymous threatening letters coincided with his arrival at SQSP, and had ceased since he was moved to the Adjustment Center.  Id.  Furthermore, Defendants point out that in each RVR, Plaintiff was allowed an IE and an SA.  Id. at 24, citing Johnson Decl. ¶ 7.  Defendants assert that Plaintiff was able to draft questions for the IE to put to various witnesses, and an IE report was written.  Id., citing Spurgeon Decl., Ex. B-002-007; Haub Decl., Ex. B-002-005; Walls Decl., Ex. B-002-005, D-003-006, F-002-006.  Lastly, Defendants assert that in each of the RVR disciplinary hearing results, Plaintiff was able to provide a statement in his defense which was essentially an alibi defense in which he attempted to show that he was not in West Block during the relevant period when the letters were discovered.  Id., citing Spurgeon Decl., Ex. A-008; Haub Decl., Ex. A-005-006; Walls Decl., Ex. A-005, C-005, E-005-006.  Defendants assert that Plaintiff's statement in defense of himself at each RVR hearing demonstrates that he had a good understanding of the charges.  Id.  Defendants contend that the undisputed facts show

that Plaintiff had adequate notice of the charges against him and an opportunity to mount a defense. Id.

Defendants also reject Plaintiff's argument in his FAC, which relies on Penal Code § 2932, subdivision (c)(1)(A), which requires in part that "written notice shall be given within 15 days after the discovery of information leading to charges that may result in possible denial of credit" and include "the specific charge, the date, the time, the place that the alleged misbehavior took place, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing…." Defendants essentially assert that they did not violate § 2932, subd. (c)(1)(A) because Plaintiff was given notice of the charge he was facing and that the several threatening letters demonstrated a pattern or a course of conduct rather than a single event. Dkt. No. 80 at 24. Defendants assert that in the context of these allegations, the material dates and locations may be when or where the letters were written or mailed, or when or where they were received or discovered. Id. at 24-29. Defendants contend that Plaintiff was given either specific or approximate dates of discovery or all the letters that were at issue in the RVRs. Id. at 25, citing Giacomazzi Decl., Ex. A-001, B-001, C-001, D-001, and E-001. Defendants assert that Plaintiff was also advised that the letters originated from the West Block of SQSP, and that there seemed to be a part of a pattern of threatening notes that started in 2014. Id. Defendants contend that this information was more than adequate notice. Id.

In opposition, Plaintiff asserts various deficiencies which he alleges for the first time. First, with respect RVR 4671, Plaintiff asserts that the RVR cited to a rule which did not mention "harassment of another person" and failed to provide definitions for "harassment" and "course of conduct," which he needed to marshal facts to formulate an adequate defense. Dkt. No. 133 at 2. He also asserts that RVR 4671 failed to adequately provide the correct date, time, and place of the alleged misbehavior such that his alibi defense was inadequate. Id. at 3-5. Plaintiff also asserts that the notice for RVR 4671 was untimely, id. at 5-6, and that the charged regulation was an "underground rule/regulation"

which only accessible to certain staff members and not to inmates, id. at 6-7.  He further claims that the notice was defective because he was not provided with a copy of the anonymous note prior to the hearing so that he could adequately challenge it.  Id. at 8.

As for Rule 4973, Plaintiff asserts that the cited regulation was also inadequate and needed clarification, which hampered his ability to present a defense.  Dkt. No. 10.  He asserts that the RVR was improperly upgraded from a misdemeanor to a felony, and that he was incorrectly charged because Nurse Wedlake was not a "public official."  Id. at 10-11.  He also asserts that the date, time, and place of the alleged misbehavior was incorrect and insufficient for him to marshal an adequate alibi defense.  Id. at 11-12.  Plaintiff also challenges the timeliness of the RVR 4973 notice, id. at 13-14, and that it was based on subdivision which is an "underground rule/regulation."  Id. at 15.

With respect to RVRs 6610, 6611, and 6612, Plaintiff asserts that the fact that these RVRs each concern multiple notes renders them "inadequate/defective" because it was "impossible to fairly decide multiple specific acts all packed into one single RVR."  Id. at 18.  Plaintiff claims this circumstance "created fundamentally defective 'notice' for each RVR that amounted to a 'miscarriage of justice.'"  Id.  He also asserts the RVRs all gave incorrect notice of the date, time, and location of the violations which hampered his efforts to marshal facts for his defense.  Id. at 19.  He also asserts that the RVRs were untimely, and that the charges were "woven together even though they had different elements to be proven" which made them confusing and in need of clarification.  Id. at 20.  He also asserts that the charges involved "underground rule/regulations," and needed clarification.  Id. at 21-22.

In reply, Defendants asserts that Plaintiff offers no evidence of his own to support his claim regarding lack of notice and that he does not challenge their evidence.  Dkt. No. 136 at 1.  Defendants assert that the time and place of the alleged violations were adequately described: the date the anonymous notes were discovered and the location of the discovery, i.e., the institutional mail system.  Id. at 2.  While Plaintiff appears to contend that the RVRs must identify the precise time the anonymous letters were written

23

1    and the location of their writing, Defendants assert that such details are not necessary to

2    satisfy due process.  Id.  Defendants assert that Plaintiff's position creates an unrealistic

3    standard that would effectively prevent the prosecution of any anonymous threatening

4    letters.  Id. at 3.

5         Defendant also asserts that the opposition asserts new, unpled allegations of

6    deficiencies, which the Court should not consider because they were not screened and are

7    not part of this case.  Id. at 2.  Furthermore, Defendants assert that each of the new

8    allegations lack evidentiary support and/or is not itself a cognizable claim.  Id.  With

9    respect to Plaintiff's allegations regarding "underground rule/regulations," Defendants

10   assert that he was noticed of the broader rule violation codes, i.e., 3005(a) and 3005(d)(1),

11   which correspond directly to Cal. Code Regs. Tit. 15, § 3005 subdivisions.  Id. at 5.

12   Defendants assert that it matters not that Plaintiff did not have access to the computer

13   system that provided the subdivisions to receive adequate notice because the RVRs plainly

14   stated the "specific act" for which he was charged; therefore, the significance of the

15   bracketed portions of the rule violation codes is irrelevant.  Id.  Defendants also point out

16   that the narratives describing the circumstances for each RVR detailed the descriptions of

17   Plaintiff's alleged conduct, putting him on notice of the charges regardless of whether he

18   was informed of the exact meaning of the bracketed portion of the rule violation code.  Id.

19        Defendants also assert that untimely notice is not a due process violation.  Id. at 6.

20   Furthermore, Defendants asserts that they did not know who authored the anonymous

21   letters until their investigation was completed on March 9, 2016, which was much later

22   than the date the anonymous letters were discovered, as Plaintiff contends.  Id.  Defendants

23   also contend that the fact that the charge in RVR 4973 – threatening to cause serious

24   bodily injury to a public official – was misclassified as a division "E" offense rather than a

25   division "B" offense, is irrelevant because the RVR nevertheless described the alleged

26   conduct and the error accrued to Plaintiff's benefit as a division "E" offense carries less

27   credit forfeiture (31-60 days) than a division "B" offense (121-150 days).  Id. at 8, citing

28   Cal. Code Regs. Tit. 15, §§ 3323(d), (g).  Defendants contend that Plaintiff's claim that

United States District Court
Northern District of California

1    RVR 4973 was improperly upgraded from a misdemeanor to a felony is false because the

2    prison disciplinary hearings are not criminal in nature, and that the initial report for RVR

3    4973 stated, "FELONY PROSECUTION LIKELY: No." Dkt. No. 80-8 (Giacomazzi

4    Decl.) at 10. Defendants also assert that Nurse Wedlake was properly identified as a

5    public official for the purposes of RVR 4973 under Cal. Code Regs. Tit. 15, § 3000, as a

6    member of the CDCR staff under Penal Code § 76. Id. at 8-9. Furthermore, Defendants

7    contend that Plaintiff's argument that the letter in RVR 4973 was not actually threatening

8    is irrelevant on the issue of whether he received adequate notice of the charge; he received

9    adequate notice because the letter's language was reproduced in full in the RVR. Id. at 9.

10   Lastly, Defendants contend that Plaintiff's argument that RVR 6612 was improperly

11   charged because it referenced multiple anonymous letters is incorrect because Cale. Code

12   Regs. Tit. 15, § 3312 specific prohibits stacking. Id. Defendants also assert that the fact

13   that the letters were charged collectively benefitted Plaintiff because he could have

14   received six guilty findings, each with a corresponding loss of credits, rather than one. Id.

**b.    <u>Analysis</u>**

16       The Ninth Circuit's most recent discussion of <u>Wolff</u>'s notice requirement was in

17   <u>Ashker v. Newsom</u>, 81 F.4th 863 (9th Cir. 2023). The Ninth Circuit noted that it had not

18   expounded on the specificity of the notice required by <u>Wolff</u>. <u>Id.</u> at 879. The appellate

19   court referred to its last decision on this issue in <u>Zimmerlee v. Keeney</u>, wherein the court

20   stated: "When determining the extent of notice required, we must 'remember "the

21   legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid

22   "burdensome administrative requirements that might be susceptible to manipulation.""'

23   <u>Id.</u> at 878, quoting <u>Zimmerlee</u>, 831 F.2d at 188 (citing <u>Superintendent v. Hill</u>, 472 U.S.

24   445, 454-55 (1985)). "Due process… is satisfied if the inmate receives written notice of

25   the charges, and a statement of the evidence relied on by the prison officials and reasons

26   for the disciplinary action." <u>Zimmerlee</u>, 831 F.2d at 186. In holding that inaccurate

27   disclosures of confidential information did not violate <u>Wolff</u>, the Ninth Circuit found,

28   among other things, that discrepancies between confidential memorandum and the

United States District Court
Northern District of California

disclosure form did not deprive the inmate of notice of the charges against him and his ability to defend against charges. <u>Ashker</u>, 81 F.4th at 879-880. In reaching this decision, the appellate court also cited a Second Circuit case which held that notice satisfying due process "need not painstakingly detail all facts relevant to the date, place, and manner of charged inmate misconduct; it must simply permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense." <u>Id.</u> at 879, quoting <u>Elder v. McCarthy</u>, 967 F.3d 113, 128 (2d Cir. 2020) (cleaned up).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of material fact with respect to Plaintiff's notice claim against Defendants. Firstly, Plaintiff does not submit any admissible evidence to dispute Defendants' evidence. Rather, his exhibits in support of the opposition are mostly duplicative of the RVR record provided by Defendants. <u>See</u> Dkt. No. 133-1 at 71-243. Furthermore, Plaintiff attempts to create a dispute by asserting that the RVRs do not comply with state regulations and the fact that outdated forms were used. <u>See, e.g.</u>, Dkt. No. 134 at 2-5. However, these disputes do not involve material facts, and, even if viewed in Plaintiff's favor, do not establish that notice was deficient under <u>Wolff</u>. Plaintiff also disputes whether the appropriate "date of discovery" was used, asserting that it should be the dates the anonymous notes were received by the ISU. However, Defendants did not know at that time who was responsible for these *anonymous* threatening letters to initiate a disciplinary action against the appropriate inmate. Only after Defendants completed their investigation into the matter and determined that Plaintiff was the author of the letters in March 2016, were they able to issue RVRs against him.

Contrary to Plaintiff's claim in the FAC, all the RVRs clearly described the date, time, and place of the alleged misbehavior, i.e., the writing of numerous anonymous threatening letters which were received by the ISU through the institutional mail coming from West Block. <u>See</u> <u>supra</u> at 8-18. This information was sufficient for a "reasonable person" to understand what conduct was at issue. <u>Ashker</u>, 81 F.4th at 879; <u>Elder</u>, 967 F.3d at 128. Furthermore, the RVRs noticed Plaintiff of the following: an investigation had

been conducted into the anonymous letters and that Plaintiff had been connected to the letters based on his pattern of hostility towards inmates, staff, and citizens alike; this pattern was also unmistakable in the nature of the threatening letters; the appearance of the letters coincided with his arrival at SQSP and placement in West Block; and the letters had ceased once Plaintiff was moved to the Adjustment Center  See supra at 8, 10, 13, 14, 16. Plaintiff was also provided with an IE and SA to assist him in preparing for each of the disciplinary hearings.  He met with them prior to the hearings, and they assisted him with getting questions to various witnesses in preparation for the hearing.  Haub Decl., Ex. B-001-005; Walls Decl., Ex. B-001-005, D-001, D-002-006, E-001, E-002-006; Spurgeon Decl., B-001-007.  If there was any confusion or lack of clarity regarding the charges against him, Plaintiff had opportunities to discuss them with the IE and SA, but he did not. Id.  Ultimately, the fact that Plaintiff was able to prepare multiple questions for various witnesses and then present a statement containing an alibi defense at each hearing clearly indicates that the RVR notices were sufficient for him to marshal a defense.  Haub Decl., Ex. A-005-006; Walls Decl., A-005, C-005, E-006; Spurgeon Decl., A-008.

As for Penal Code § 2932, even if Defendants failed to comply with this state regulation, or any other state regulation, it does not rise to a constitutional violation.  The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that prisons comply with its own, more generous procedures.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994).  A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the Wolff standard."  Id. at 1420.  Here, the undisputed evidence clearly shows that Wolff's standard was met.

Nor do Plaintiff's other allegations of discrepancies and technicalities regarding notice establish a Wolff violation.  See supra at 23-24.  None of the newly alleged deficiencies regarding notice, even if true, prevented Plaintiff from preparing and presenting a defense at the re-hearings.  Even when the cited regulation was incorrect or unclear, Plaintiff's preparations for the hearings indicate that he nevertheless understood

United States District Court
Northern District of California

the charges against him.  Lastly, timeliness is not at issue here, and Plaintiff's attempt to argue it does not render the notices inadequate.

Based on the foregoing, Defendants have demonstrated the absence of a genuine issue of material fact with respect to the due process claim against Defendants.  See Celotex Corp., 477 U.S. at 323.  Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, see Keenan, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, In re Oracle Corporation Securities Litigation, 627 F.3d at 387.  Accordingly, Defendants are entitled to summary judgment on the due process claim regarding Wolff's notice requirement as a matter of law.  Celotex Corp., 477 U.S. at 323.

### 2.    Confidential Information

Plaintiff claims that he was denied his right to due process based on the use of unreliable confidential and non-confidential information in support of the five RVRs at issue.  Dkt. No. 15-1 at 24, 27.

### a.    Parties' Arguments

Defendants assert that Plaintiff was served with Form 1030s advising him that confidential information was used, how it was deemed reliable, and what information was received.  Dkt. No. 80 at 26, citing Johnson Decl. ¶ 20, Ex. A, B, C; Dorsey Decl. ¶ 23. Defendants assert that the disciplinary hearing results for each RVR also contain a confidential information section which indicates that: the SHO reviewed the information, sufficient information was disclosed, a 1030 form was issued, and the reasons why it was correctly deemed confidential and reliable.  Id., citing Walls Decl., Ex A-003-004, C-003-004, E-003-004; Spurgeon Decl., Ex. A-003-006; Haub Decl., Ex. A-003.  Defendants contend that the undisputed facts show that there was information from which prison officials could deem the confidential information reliable and an affirmative statement from a prison official that disclosing the confidential information would present safety concerns.  Dkt. No. 80 at 27.

In opposition, Plaintiff asserts for the first time that he received only six (6) Form 1030s with RVR 4671 and RVR 4973, in violation of state regulations, and not the remaining twenty-three (23) Form 1030s. Dkt. No. 133 at 9, 16-17. On the other hand, with RVRs 6610, 6611, and 6612, Plaintiff asserts he did not receive the first six Form 1030s, while receiving the other 23 Form 1030s. Id. at 22-23. He also asserts that the first six Form 1030s were outdated (over 30 years old) and did not indicate that the information provided was corroborated through investigation or by non-confidential sources. Id. at 9, 16-17. He contends this fatal flaw infected the disciplinary hearing findings because the SHO checked boxes for all the Form 1030s, indicating that they were corroborated yet the original Form 1030s lacked this information. Id. Plaintiff also contends the SHO failed to consider that 23 of the Form 1030s were withheld from Plaintiff in violation of state regulations. Id. Plaintiff asserts that there was no factual information from which the SHO could reasonably conclude that the information was reliable. Id. at 23. He also asserts that two of the "non-confidential" information came from himself. Id. Plaintiff contends that there was no "prison official's affirmative statement that safety considerations prevented the disclosure of at least the dates when the relevant informants provided the confidential information that was proven to be true," an "oath of the investigating officer… as to the truth of his report that contains confidential information," or "corroborating testimony." Id.

In reply, Defendants assert that Plaintiff's claim that confidential information was improperly withheld is contradicted by the factual record which shows that he received all the appropriate Form 1030s with each RVR. Dkt. No. 136 at 7. Defendants contend that confidential information may be withheld based on conditions under Zimmerlee, 831 F.2d at 186. Defendants assert that for each RVR, Plaintiff received Form 1030s which indicated the reason why the confidential information was reliable as well as providing a brief description of the confidential information. Id., citing Johnson Decl. at 5, 8-39. Defendants contend that the hearing results for each RVR indicate the reason for withholding the confidential information, i.e., because the information, if known, would

1    endanger individuals and jeopardize institutional security.  Id.  Defendants also assert that

2    the hearings results indicate that the Form 1030s were served on Plaintiff the same date as

3    the initial RVR reports.  Id., citing Haub Decl. at 7, 9; Walls Decl. at 9, 11-12, 24, 26-27,

4    40, 42-43; Spurgeon Decl. at 8, 10-13.  Defendants assert that the prison followed the

5    appropriate procedures by both disclosing the reason why the confidential information was

6    reliable and the reason why withholding the confidential information was necessary.  Id.,

7    citing Zimmerlee, 831 F.2d at 186.  Defendants contend that in addition to being

8    improperly raised for the first time in his opposition, Plaintiff's allegations are not

9    supported by the facts.  Id. at 8.

10                                  **b.    Analysis**

11              In Superintendent v. Hill, 472 U.S. 445, 454 (1985), the Court held that the

12    revocation of good-time credits does not comport with the minimum requirements of

13    procedural due process in Wolff unless the findings of the prison disciplinary board are

14    supported by some evidence in the record.  The standard for the modicum of evidence

15    required is met if there was some evidence from which the conclusion of the administrative

16    tribunal could be deduced.  Id. at 455.  An examination of the entire record is not required

17    nor is an independent assessment of the credibility of witnesses or weighing of the

18    evidence.  Id.  The relevant question is whether there is any evidence in the record that

19    could support the conclusion reached by the disciplinary board.  Id.  The Supreme Court

20    reiterated that revocation of good-time credits is not comparable to a criminal conviction

21    and neither the amount of evidence necessary to support such a conviction, nor any other

22    standard greater than some evidence, applies in this context.  Id. at 456.  The Ninth Circuit

23    additionally has held that there must be some indicia of reliability of the information that

24    forms the basis for prison disciplinary actions.  See Cato v. Rushen, 824 F.2d 703, 704-05

25    (9th Cir. 1987) (only evidence implicating defendant placed in disciplinary segregation

26    was uncorroborated hearsay statement of confidential informant who had no first hand

27    knowledge of any relevant statements or actions of defendant and polygraph statement of

28    inmate who made statement was inconclusive).  Even so, insufficient reliability

1    determinations alone do not violate due process.  <u>Ashker</u>, 81 F.4th at 883 ("it is the lack of

2    'some evidence' that violates due process – not necessarily the lack of sufficient reliability

3    determinations alone").

4        If the information relied upon by the disciplinary committee are the statements of an

5    unidentified informant, due process requires that the record contain: (1) some factual

6    information from which the committee can reasonably conclude that the information was

7    reliable and (2) a prison official's affirmative statement that safety considerations prevent

8    the disclosure of the informant's name.  <u>See</u> <u>Zimmerlee</u>, 831 F.2d at 186.  Review of both

9    the reliability determination and the safety determination should be deferential.  <u>Id</u>.

10       Reliability may be established by: (1) the oath of the investigating officer appearing

11    at the committee as to the truth of his report that contain confidential information, (2)

12    corroborating testimony, (3) a statement on the record by the chairman of the committee

13    that he had firsthand knowledge of sources of information and considered them reliable

14    based on the informant's past record, or (4) an <u>in</u> <u>camera</u> review of the documentation

15    from which credibility may be assessed.  <u>Id</u>. at 186-87.  Proof that an informant previously

16    supplied reliable information is sufficient.  <u>Id</u>. at 187.

17       Viewing the evidence in the light most favorable to Plaintiff, the Court finds there is

18    no genuine dispute of material fact with respect to this claim.  First of all, the fact that the

19    1030 forms were outdated does not create a genuine issue for trial as the information

20    contained in the outdated forms was not materially different from what the SHO had to

21    indicate in their disciplinary hearing results.  <u>Compare</u>, <u>e.g.</u>, Dkt. No. 80-4 at 26 with Dkt.

22    No. 133-1 at 128.  Even if Plaintiff initially received only six of the Form 1030s, the

23    information contained in these forms constitutes "some evidence" to support the

24    conclusion of the SHOs in RVRs 4671 and 4973.  Dkt. No. 133-1 at 128-133.  The

25    confidential information included in these six Form 1030s were as follows: (1) six sources

26    identifying Plaintiff as authoring the anonymous notes as well as circumventing the mail

27    procedures in West Block on February 4, 5, 12, 13, and 17, 2016; (2) a source disclosed

28    Plaintiff was writing threatening notes in West Block on February 13, 2016; (3)

United States District Court
Northern District of California

confidential information was received that Plaintiff was circumventing the mail procedures on February 12, 2026; (4) information was received from a confidential source that Plaintiff was authoring threatening letters as well as circumventing the mail procedures on February 12, 2016; (5) confidential information was received that Plaintiff authored anonymous notes in West Block on February 5, 2016; and (6) confidential information was received identifying Plaintiff as authoring anonymous notes in West Block on February 4, 2016.  Id.  These six Form 1030s all indicated that more than one source independently provided the same information, that part of the information provided by the source(s) has already proven to be true, and that the information was located in a confidential memorandum dated March 7, 2016, authored by Defendant Petrovic.  Id.

With respect to the remaining 23 Form 1030s, the information contained in these documents also constitute "some evidence" to support the conclusion of the SHOs in RVRs 6610, 6611, and 6612.  That information was as follows: (1) Plaintiff had a pattern of hostility towards others, his temper and proclivity for threats and violence; (2) the author had likely recently been severely disappointed and disillusioned, like Plaintiff who had recently lost a lawsuit against his brother for a portion of their mother's inheritance; (3) the rise of anonymous threatening letters coincided with Plaintiff's arrival at SQSP and then ceased once he was rehoused in the Adjustment Center; (4) the handwriting was concealed at times through the use of forgery, of which Plaintiff had a history; (5) one inmate whom Plaintiff had assaulted became the victim of an anonymous letter that identified him as a threat; (6) information that Plaintiff had forged another inmate's handwriting and was in possession of a weapon which evidenced the seriousness of the threats; (7) an informant describing the same weapon that was in Plaintiff's possession on March 5, 2016; (8) a confidential informant stating that he saw Plaintiff a few times in his cell appearing secretive while writing; (9) a confidential informant stating that he knew for certain Plaintiff was writing threatening notes and utilizing other inmates unknowingly to drop off his letters in the mail; (10) two confidential informants confirming Plaintiff was using other inmates to mail his letters out; (11) several confidential informants expressing

fear of Plaintiff and describing him as unstable and volatile; and (12) several confidential informants describing Plaintiff's practice of writing threatening notes to people he did not like. Dkt. No. 133-1 at 141-157. Each of these Form 1030s indicated at least one reason for the reliability of the information and that the identity of the confidential source could not be disclosed without endangering the source(s) or the security of the institution. Id. Lastly, they all referred to the confidential memorandum dated March 7, 2016, authored by Defendant Petrovic. Id. Accordingly, due process was satisfied with regard to the statements of unidentified informants because the record contains some factual information from which the SHO could reasonably conclude that the information was reliable, e.g., the information corroborated each other, and that safety considerations prevented the disclosure of the informant's names, e.g., Plaintiff's hostile and violent history towards others. Moreover, even if some of these confidential sources were not sufficiently reliable and therefore should not have been considered, the information from the remaining corroborated sources was more than sufficient to constitute "some evidence" with some indicia of reliability. Hill, 472 U.S. at 455; Cato, 824 F.2d at 704-05.

Plaintiff requests that the Court conduct an *in camera* review to determine the reliability of the confidential information. Dkt. No. 133 at 25. However, Hill does not require an examination of the entire record nor an independent assessment of the credibility of witnesses or weighing of the evidence. Hill, 472 U.S. at 455. Furthermore, even if the confidential information was not sufficiently reliable, this alone does not violate due process. Ashker, 81 F.4th at 883. The Court need only determine whether there is *any* evidence in the record that could support the conclusion reached by the SHO. Hill, 472 U.S. at 455. The Court has done so.

Defendants have demonstrated the absence of a genuine issue of material fact with respect to this due process claim involving the use of unreliable confidential information. See Celotex Corp., 477 U.S. at 323. Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, see Keenan, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in

his favor, <u>In re Oracle Corporation Securities Litigation</u>, 627 F.3d at 387.  Accordingly, Defendants are entitled to summary judgment on this due process claim as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 323.

## CONCLUSION

For the foregoing reasons, Defendants M. Giacomazzi, D. Dorsey, D. Petrovic, B. Haub, B. Walls, D. Spurgeon, P. Covello, J. Arnold, and M. Nelson's motion for summary judgment is **GRANTED**.[13]  Dkt. No. 80.  The due process claims against them are **DISMISSED** with prejudice.

This order terminates Docket No. 80.

**IT IS SO ORDERED.**

**Dated:**  March 28, 2025

EDWARD J. DAVILA
United States District Judge

---

[13] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument.  Dkt. No. 80 at 27.

34